**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YIXI SUN,<br><br>                          Petitioner,<br><br>        v.<br><br>WARDEN OF ADELANTO ICE PROCESSING CENTER, ET AL.,<br><br>                          Respondents. | Case No. 5:26-cv-03595-MBK<br><br>ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS |

Petitioner Yixi Sun, a citizen of China, is in the custody of the Department of Homeland Security at the Adelanto Detention Facility. Mr. Sun entered the United States without inspection on or around October 5, 2024. Soon after his arrival, immigration authorities apprehended Mr. Sun and subsequently released him on his own recognizance pursuant to 8 U.S.C. § 1226(a). Following his release, Petitioner filed an application for asylum, which remains pending before the Immigration Court. During his time in the United States, Petitioner has regularly reported for Immigration and Customs Enforcement ("ICE") appointments, proceeded with his immigration case,

maintained gainful employment, paid taxes, developed ties with his community, and not committed any criminal offenses.

On or around March 20, 2026, Petitioner reported as required to a check-in with ICE, at which ICE officers arrested Petitioner and later transported him to Adelanto Detention Facility. On April 28, 2026, Petitioner requested a custody redetermination hearing before an Immigration Judge ("IJ"). The IJ denied Petitioner's request, finding that it lacked jurisdiction to set bond pursuant to *Matter of Q. Li*, and that Petitioner was not a *Bautista* member. Following the IJ's denial of a bond hearing, Petitioner, through prior counsel, filed a petition for writ of habeas corpus in the Central District of California, challenging his detention without a bond hearing. The Court granted the petition and ordered the Government to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a). On June 4, 2026, an IJ conducted a bond hearing and denied Petitioner's release on bond, finding that Petitioner had failed to meet his burden to establish that he was not a flight risk. On June 29, 2026, Petitioner filed the instant petition, challenging his ongoing detention under the Due Process Clause and 8 U.S.C. § 1226(a). Respondent filed an Answer to the Petition on July 7, 2026. Petitioner filed a reply on July 10, 2026.

For the reasons that follow, the Court finds that Petitioner's re-detention—without any pre-deprivation process or demonstrated change in circumstances—violates due process. Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a

hearing where the Government must show material changed circumstances justifying Petitioner's detention.

## I.   FACTS AND PROCEDURAL HISTORY

Petitioner Yixi Sun is a native and citizen of the People's Republic of China. Dkt. 1 at 1. On or around October 5, 2024, Petitioner entered the United States without inspection. *Id.* at 5. Upon his entry to the United States, immigration authorities took Petitioner into custody. *Id.* On October 6, 2024, the Department of Homeland Security issued a Notice to Appear ("NTA"), charging Petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled. *Id.* On or around October 8, 2024, immigration authorities released Petitioner on his own recognizance under 8 U.S.C. § 1226(a). *Id.* As a condition of his release, Petitioner was required to report to ICE periodically and enroll in the Intensive Supervision Appearance Program ("ISAP"). *Id.* at 6.

Following his release, Petitioner filed an application for asylum, which remains pending before the Immigration Court. *Id.* at 5-6. In connection with these proceedings, Petitioner was granted employment authorization and has maintained stable employment in the United States. *Id.* During his time in the United States, Petitioner "attended church regularly, worked to support himself, paid taxes, and lived openly and peacefully in the community." *Id.* Mr. Sun claims that he has complied with his supervision requirements, and has no criminal convictions or arrests, since his release from custody. *Id.* Respondents do not dispute that Petitioner has largely complied with his release conditions, but allege that he violated his ISAP requirements on three occasions: a missed virtual home visit on October 28, 2024, and missed biometric check-ins on September 9 and September 23, 2025. Dkt. 8-1 at 3. It

does not appear that ICE took any action to address these alleged violations after they occurred.

On March 20, 2026, Petitioner reported as instructed for a check-in with ICE. Dkt. 1 at 5-6. Without prior notice that he would be re-detained, ICE officers arrested and detained Mr. Sun. *Id.* Petitioner was thereafter transported to Adelanto Detention Facility, where he has remained detained since. *Id.* When they detained Petitioner, immigration authorities also confiscated Petitioner's personal belongings, identification and work authorization documents, medical insurance card, and cell phone. *Id.*

While detained, on April 28, 2026, Petitioner requested a custody redetermination hearing before an IJ. *Id.* The IJ denied Petitioner's request, finding that the immigration court lacked jurisdiction to set bond pursuant to *Matter of Q. Li*, and that Petitioner was not a member of the Bond Eligible Class in *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). *Id.* Petitioner, through prior counsel, filed a petition for writ of habeas corpus, challenging the denial of the custody redetermination hearing, and requesting either a bond hearing or immediate release. *See Yixi Sun v. Enforcement and Removal Operations Field Office Director, Los Angeles, et al.,* (C.D. Cal., Case No. 5:26-cv-02428-MBK) ("*Sun I*"). The Court granted the petition and ordered Respondents to provide Petitioner with a bond hearing. *See Sun I,* Dkt. 9. On June 4, 2026, Petitioner appeared for the court-ordered bond hearing. Dkt. 1 at 6. The IJ denied bond, finding that Petitioner had not met his burden to establish that he was not a flight risk. *Id.*

Petitioner filed the instant habeas petition on June 29, 2026. Dkt. 1. Petitioner challenges his re-detention and continued confinement under the

Due Process Clause and 8 U.S.C. § 1226. *Id.* at 7-12. Among other relief, Petitioner requests that the Court issue an order requiring his immediate release, enjoining Respondents from rearresting or re-detaining Petitioner without pre-deprivation notice and a hearing, and requiring the return of Petitioner's personal belongings. *Id.* at 12-13.

The Court issued General Order 26-05 and briefing schedule on June 30, 2026. Dkt. 5. Respondents filed an Answer on July 7, 2026. Dkt. 8. In their answer, Respondents argue that the Petition should be denied because Petitioner has not appealed the denial of his release on bond to the Board of Immigration Appeals ("BIA") and Petitioner's June 4, 2026 bond hearing forecloses his procedural due process claim. Dkt. 8.

## II.    DISCUSSION

Petitioner argues that his re-detention without notice or a pre-deprivation hearing violated procedural due process and that his ongoing detention is not justified on danger or flight risk grounds. For the reasons that follow, the Court agrees and concludes that Petitioner's post-detention bond hearing did not cure the due process violations that he suffered.

**A. Petitioner Has Shown that a Waiver of Exhaustion is Warranted.**

As an initial matter, Respondents argue that the Court should decline to address Petitioner's claims because he has not fully exhausted administrative remedies by appealing the IJ's bond determination to the BIA. Dkt. 8 at 4.

While administrative exhaustion is not a jurisdictional requirement for habeas petitions filed under 28 U.S.C. § 2241, courts typically "require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*,

5

678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal quotations and citations omitted).

The Court finds that a waiver of the prudential exhaustion requirement is warranted in this case. The Petition presents two claims: (1) Petitioner's re-detention violates due process; and (2) Petitioner's ongoing detention is not statutorily authorized because the Government did not arrest him pursuant to a warrant, which is required by Section 1226(a). Dkt. 1 at 7-12. In his reply brief, Petitioner also argues that (3) the IJ abused its discretion by denying him release on bond. Dkt. 9 at 5-8. It would be futile to require Petitioner to exhaust his first two claims because the BIA "does not have jurisdiction to determine the constitutionality of the statutes it administers." *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006); *See In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer."). While the BIA would have authority to review the IJ's ultimate determination

that Petitioner is a flight risk, the Court does not believe it prudent to delay resolution of Petitioner's constitutional claims pending any such appeal, particularly because it is not clear that Petitioner's challenge to the bond denial—which was raised for the first time in his reply brief—is properly before the Court.

Accordingly, the Court waives the prudential exhaustion requirement.

**B. Petitioner's Re-Detention Violates Procedural Due Process.**

Petitioner Sun argues that procedural due process principles prohibit the Government from re-detaining him without pre-deprivation process. Dkt. 1 at 7-11.

A "two-step analysis" applies to procedural due process claims. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). First, the Court must determine if Petitioner was deprived of a constitutionally protected interest. *Id.* Second, if such an interest exists, the Court then considers "whether that deprivation was accompanied by sufficient procedural protections." *Id.* To evaluate the adequacy of procedural protections, the Court applies the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976).

**1.  Petitioner has a Constitutionally Protected Liberty Interest**

"It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "While the temporary detention of non-citizens may sometimes be justified by concerns

7

about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Petitioner argues—and Respondents do not dispute—that he has a constitutionally protected interest in freedom from incarceration. Dkt. 1 at 9. In addition, Petitioner has been living at large in the United States for nearly two years pursuant to his release on his own recognizance, during which time he has developed significant ties in the United States. As discussed more fully below, Petitioner has a significant liberty interest in maintaining his settled life outside of custody. As such, the Court concludes that Respondents deprived Petitioner of a constitutionally protected liberty interest when they re-detained him.

### 2. *Mathews* Balancing Test

Because Respondents deprived Petitioner of a protected liberty interest, the Court considers "whether that deprivation was accompanied by sufficient procedural protections." *Johnson*, 55 F.4th at 1179.

### a. Private Interest

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his life out of custody. Petitioner has resided in the United States for nearly two years, during which time he was granted a work permit. Dkt. 1 at 5-6.

While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty

or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

While Petitioner has only resided in the United States for almost two years, a person can develop meaningful ties in such a relatively short period of time. Even if Petitioner has "a lesser liberty interest" "at the margin" than other noncitizens released pending removal proceedings, "the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

For these reasons, numerous courts in this District and throughout the country—including the undersigned Magistrate Judge—have found noncitizens paroled into the United States, or released on conditional parole shortly after their entry into the United States, for comparable periods have a significant liberty interest in maintaining their freedom from confinement. *See Lugos v. Mullin,* No. 5:26-cv-01880-KES, 2026 WL 1250264, at *5 (C.D. Cal. May 1, 2026) ("nearly two years"); *Medrano-Rocha v. Santacruz*, No. 2:26-cv-00404-KK-SSC, 2026 WL 411355, at *3 (C.D. Cal. Jan. 23, 2026) ("nearly three years"); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) ("approximately three years"). *See also Torres*, 2026 WL 145715, at *5 ("This Court joins many others in finding that

9

humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*.") (collecting cases); *G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1108–10 (E.D. Cal. 2025) (same).

### b. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of [his] liberty interest absent a pre-detention hearing." *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699.

The record suggests that Petitioner Sun is not a flight risk or danger requiring his detention. Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on his own recognizance pursuant to Section 1226(a). Dkt. 1 at 6. Petitioner's release reflects the Government's determination that Petitioner did not present a sufficient danger or flight risk requiring his detention. *See* 8 C.F.R. § 236.1(c)(8) (providing that the Government may release a noncitizen under Section 1226 "provided that the alien [] demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding").

As discussed more fully in Section II.C. below, Respondents have not shown any material change in circumstances to suggest that Petitioner's

initial release order was in error. Petitioner has maintained a stable residence and employment, has no criminal history, has proceeded with his immigration case, and largely complied with his supervision conditions during his time in the United States. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

### c. Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz*, 2025 WL 4051129 at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

* * *

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process

11

is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.

### 3. Petitioner's Post-Deprivation Bond Hearing did not Cure the Procedural Due Process Violation

Respondents also argue that the bond hearing that this Court ordered on May 28, 2026, cured any due process violation and ameliorates any risk that Petitioner has been erroneously detained. *Id.* at 6. The Court disagrees, for two basic reasons.

First, most courts to address the issue have "concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *Orellana-Rivera v. J. Johnson*, 5:26-cv-2116-HDV-AJR, Dkt. 18 at 2 (C.D. Cal. May 14, 2026) (observing that an "increasing wave of district courts have concluded, a post-hoc bond hearing" is insufficient to remedy the denial of a petitioner's right to pre-deprivation process and ordering the petitioner's release). These decisions reason that a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *Khalsa v. Janecka, et al.*, No. 5:26-cv-00623-CAS-AGR, 2026 WL 486670, at *7 (C.D. Cal. Feb. 19, 2026) (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)). *See also Mendoza v. Adelanto ICE Processing Center Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026) ("allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless"); *Hector Jose Martinez Lopez v. Dep't of Homeland Sec. et al.*,

12

No. 25-cv-03607-KK-ADS, 2026 WL 1365980, at \*7 (C.D. Cal. Apr. 23, 2026) ("a post-detention bond hearing would offer little more than cold comfort to Petitioner, whose erroneous deprivation of liberty, along with the concomitant damage to his mental health and impact on his family, has already taken place") (cleaned up).

These decisions rest on the principle a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.'" *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at \*5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at \*7 (E.D. Cal. July 16, 2025)); *Chowdhury v. Lyons*, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at \*7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections"). As the Second Circuit has explained, "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error." *United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (cleaned up). This principle has particular force where, as here, the constitutional protections are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Second, as Petitioner argues, the IJ applied the incorrect standard and burden of proof at his bond hearing. Dkt. 9 at 5-7. The IJ placed the burden on Petitioner to demonstrate why he should be released, consistent with the procedures that typically apply to noncitizens arrested under Section 1226(a).

13

*See* 8 C.F.R. § 1236.1(c)(8). However, Petitioner was detained *after* the Government previously released him from custody based on its determination that his detention was unnecessary. As discussed more fully in Section II.C. below, in such circumstances, agency practice and due process principles require that the Government bear the burden to show changed circumstances to justify Petitioner's re-detention.

Consistent with this view, numerous courts in the Ninth Circuit have found that the Government may only re-detain certain noncitizens where it demonstrates that they are a danger or flight risk by "clear and convincing" evidence. *See, e.g., Sanchez Hernandez v. Noem*, No. 5:26-cv-01089-JWH-KES, 2026 WL 1603908, at *2 (C.D. Cal. June 4, 2026); *E.G.M. v. Scott*, No. 26-cv00744-KKE, 2026 WL 914803, at *6 (W.D. Wash. Apr. 3, 2026); *Bajaj v. Cruz*, No. 2:26-cv-01031-CAS-SP, 2026 WL 700543, at *5 (C.D. Cal. Mar. 4, 2026); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). *See also Venega-Maltez v. Semaia*, No. 5:26-cv-00525-JAK-AGR, 2026 WL 846035, at *9 (C.D. Cal. Mar. 24, 2026). In such circumstances, courts have concluded that "'it is improper to ask the individual to share equally with society the risk of error when the possible injury to the individual . . . is so significant'" and found it appropriate that the Government bear the burden by "clear and convincing" evidence. *Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *9 (W.D. Wash. Feb. 23, 2026) (quoting *Singh v. Holder,* 638 F.3d 1196, 1203-1204 (9th Cir. 2011).

Accordingly, the Court concludes that the IJ applied the incorrect standard and burden of proof to justify Petitioner's re-detention and, in any event, such post-deprivation process cannot cure the procedural due process violation he suffered.

### C. Petitioner's Re-Detention Violates Substantive Due Process

Petitioner also argues that his detention in unlawful because there is "no evidence" that it serves the Government's legitimate purposes in preventing risk of danger or flight. Dkt. 1 at 9.

### 1. The Government May Only Re-Detain a Noncitizen Where There Has Been A Material Change in Circumstances

Due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). The Supreme Court has recognized only two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal, and preventing danger to the community. *Id.* at 690-92.

Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances these purposes. The statute provides that the Government "may" detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When a person is apprehended under Section 1226(a), ICE officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Under the regulations, the ICE officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.*

After the initial custody determination, the noncitizen may request that an IJ review the determination at a bond hearing in immigration court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national

security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

For individuals like Petitioner who were released under authority of Section 1226, the statute provides that the Government "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). However, the BIA has recognized a limitation on the Government's authority to re-detain, indicating that "no change should be made by [DHS] absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). The Government has represented that, pursuant to this practice, "DHS generally only re-arrests an alien pursuant to § 1226(b) after a material change in circumstances." *Id.* (quoting Government brief). *See also Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (citing *Matter of Sugay* and recognizing that "absent changed circumstances, such as reinvolvement with the criminal justice system, ICE cannot redetain Panosyan") (internal citations and quotations omitted).

While this rule was adopted as a matter of agency practice, its grounding is constitutional. Where the Government previously determined that a noncitizen's detention is not necessary, it follows that re-detention is only justified if there has been some change in circumstances demonstrating

16

that the noncitizen now presents a risk of danger or flight requiring detention. The rule ensures that detention bears a "reasonable relation" to a legitimate purpose and protects against an arbitrary deprivation of a noncitizen's liberty. *See Zadvydas*, 533 U.S. at 690. *See also Safi v. Noem*, No. 2:26-CV-00308-TLF, 2026 WL 445564, at *3 (W.D. Wash. Feb. 17, 2026) ("This standard prevented arbitrary revocations and ensured that detention decisions rested on individualized assessments of changed circumstances rather than categorical assumptions.").

For this reason, numerous courts have recognized that due process requires that the Government may only re-detain a noncitizen based on a material change in circumstances. *Id.*; *Qazi v. Albarran*, No. 2:25-cv-02791-TLN-SCR, 2025 WL 2769837, at *3 (E.D. Cal. Sept. 29, 2025) ("Petitioner was previously released pursuant to a finding that he was not at risk of fleeing or harming others, and as such, due process prevents him from being redetained except upon a showing of a material change in circumstances."); *Yan Lu v. Los Angeles Field Dir., et al.*, No. 5:26-CV-575-JAK-SP, 2026 WL 1455317, at *3 (C.D. Cal. May 7, 2026) (same); *Lesic v. LaRose*, No. 25-cv-2746-LL-BJW, 2025 WL 3158675, at *2 (S.D. Cal. Nov. 12, 2025) (same); *Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) (same); *Meza v. Bonnar*, No. 18-cv-02708-BLF, 2018 WL 2554572, at *3 (N.D. Cal. June 4, 2018) (same).

**2. Respondents Have not Shown a Material Change in Circumstances Warranting Petitioner's Re-Detention**

Respondents argue that Petitioner's re-detention was justified because he allegedly violated his ISAP conditions by missing a virtual home visit on October 28, 2024, and biometric check-ins on September 9 and September 23, 2025. Dkt. 8-1 at 3.

17

However, Respondents have not shown that the alleged violations constitute materially changed circumstances justifying Petitioner's detention. The Government apparently took no action to address Petitioner's alleged violations after they occurred and left him on supervision under the same terms and conditions of his release. This reflects that the Government apparently did not view Petitioner's alleged violations as sufficiently serious to require any reprimand or change in his supervision conditions, much less that they necessitated his re-detention. It appears that Petitioner was only informed of these alleged violations when he dutifully reported for an in-person check-in with ICE on March 20, 2026, when he was detained. Petitioner's appearance for this check-in demonstrates that he was not attempting evade immigration authorities or that he was unable to comply with his supervision conditions. *See Fernando A.G. v. Chestnut*, No. 1:25-CV-01925-SKO, 2026 WL 74007, at *6 n.6 (E.D. Cal. Jan. 9, 2026) (finding it significant that the petitioner "was arrested in the context of complying with an order to check in on December 3, 2025" after alleged ISAP violations); *Singh v. Warden of Golden State Annex*, No. 1:26-cv-01406-KES-HBK, 2026 WL 1108233, at *1 (E.D. Cal. Apr. 23, 2026) (same).

Apart from the alleged ISAP violations, Respondents do not dispute that Petitioner has complied with his conditions of supervision, including by appearing at his immigration court proceedings and in-person ICE check-in appointments, applying for asylum, obtaining a work permit and steady employment, and maintaining a stable life in the United States. He has had no criminal arrests or convictions during his time in the United States. In light of this record, the Court concludes that Respondents have not shown that there was a material change in circumstances requiring Petitioner's detention.

## III.   CONCLUSION

For the foregoing reasons, the Court orders the following: (1) Judgment be entered granting the Petition as to Petitioner; (2) a writ of habeas corpus be issued requiring Petitioner Yixi Sun's (A# 226-141-705) immediate release subject to the same conditions as were previously in place and prohibiting his re-detention absent a hearing at which the Government shows material changed circumstances justifying his detention; (3) the Government return all of Petitioner's personal belongings, including his identification documents, work authorization, and cell phone; and (4) that Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

Dated: July 14, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE